**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| United States of America,<br><br>                           Plaintiff,<br><br>          -v-<br><br>Linda B. Phillips, Robert S. Phillips, County of Suffolk, New York, J.S. Funding Corporation, Commissioner of the New York Department of Taxation and Finance, SW Anderson Sales Co., Clerk of the Suffolk County Traffic and Parking Violations Agency, Town of Smithtown Receiver of Taxes, and Cavalry SPV I, LLC as assignee of Citibank, N.A.,<br><br>                      Defendants. | 2:22-cv-2564<br>(NJC) (JMW) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

The United States of America ("Plaintiff") brings this action under 28 U.S.C. §§ 7401 and 7403 and 28 U.S.C. § 3201 to enforce federal liens against real property located at 434 Meadow Road, Kings Park, New York 11754 (the "Property"). (Compl. at 1, 13, ECF No. 1; *id.* ¶¶ 11, 44.) Although the initial Complaint named numerous defendants, including Linda B. Phillips and Robert S. Phillips (the "Phillipses"), the only remaining Defendants are the County of Suffolk, New York (the "County") and the Clerk of the Suffolk County Traffic and Parking Violations Agency (the "Clerk," and together, "Defendants").[1] I refer to Plaintiff and Defendants as the "Parties."

---

[1] The claims against the other defendants were disposed as follows. Default judgment was entered against the Commissioner of the New York Department of Taxation and Finance on March 25, 2025. (ECF No. 73.) The remaining individuals and entities named as defendants in

Before me are the Parties' cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") ("the Parties' Cross-Motions" or "the Cross-Motions"). (Pl.'s Mot., ECF No. 61; Defs.' Mot., ECF No. 65.) Plaintiff seeks summary judgment and an order that the Property be sold, with the net proceeds applied first to satisfy the Plaintiff's judgment liens. (Pl.'s Mem. at 6, 19.) Defendants seek summary judgment dismissing the Complaint, "or in the alternative, an order . . . that the County's ad valorem tax liens are superior to those of [Plaintiff] and that the County . . . is entitled to satisfy its superior tax liens out of the proceeds of any foreclosure sale directed by this Court." (Defs.' Mem. at 1; *see also* Defs.' Reply at 7.) Defendants also request an order "directing that [the] [P]roperty be sold" but have not brought any counterclaims seeking such relief or requested such relief in their Answer. (*See* Defs.' Reply at 7; Defs.' Answer, ECF No. 21.)

For the reasons set forth below, I grant Plaintiff's Cross-Motion for Summary Judgment ("Plaintiff's Cross-Motion") in its entirety, order a judicial sale of the Property, and order that the proceeds from such a sale will first be used to satisfy Plaintiff's judgment liens before being applied to any County tax liens. I deny the Defendants' Cross-Motion for Summary Judgment ("Defendants' Cross-Motion") as to the request for a judgment finding that the County's tax liens have priority over Plaintiff's judgment liens and federal tax liens and dismiss as moot Defendants request for an order directing a judicial sale of the Property.

---

the Complaint—the Phillipses, J.S. Funding Corporation, SW Anderson Sales Co., the Town of Smithtown Receiver of Taxes, and Cavalry SPV I, LLC as assignee of Citibank, N.A.—have acknowledged service of the Summons and Complaint and disclaimed any remaining interest or claim in the Property. (ECF No. 12 (the Phillipses); ECF No. 11 (J.S. Funding Corporation); ECF No. 7 (SW Anderson Sales Co.); ECF No. 26 (the Town of Smithtown Receiver of Taxes); ECF No. 19 (Cavalry SPV I, LLC as assignee of Citibank, N.A).)

## JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1340, and 1345, because it is brought by the United States under federal laws, specifically 28 U.S.C. §§ 7401 and 7403, which concern civil actions to collect unpaid taxes and to enforce the United States' liens arising from unpaid taxes, and because Plaintiff seeks declaratory relief regarding the scope of provisions of the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001, et seq.—specifically, 28 U.S.C. § 3201 ("Section 3201")—and the Federal Tax Lien Act ("FTLA")—specifically, Internal Revenue Code Section 6323(b)(6) ("Section 6323"), 26 U.S.C. § 6323.

## BACKGROUD

The following facts are not in dispute, unless otherwise noted.

Title in the Property was conveyed to the Phillipses by a deed that was executed on September 21, 1982, and recorded on November 8, 1982. (Defs.' Counterstatement ¶ 43; Pl.'s Counterstatement ¶ 4.) Between February 5, 2001 and June 16, 2003, a delegate of the Secretary of the Treasury made five assessments of tax fund recovery penalties against Linda Phillips for her failure to pay federal income taxes, Federal Insurance Contributions Act ("FICA"), and Medicare taxes withheld from wages of the employees of Frost Sheet Metal Co. Inc., which she was responsible to collect. (Defs.' Counterstatement ¶ 1.) Between January 9, 2006 and August 10, 2008, a delegate of the Secretary of the Treasury, likewise, made thirteen assessments of tax fund recovery penalties against Robert Phillips for his failure to pay federal income taxes, FICA, and Medicare taxes withheld from wages of the employees of Jersey Sheet Metal Work, Inc., which he was responsible to collect. (Defs.' Counterstatement ¶ 4.) On October 19, 2009, a delegate of the Secretary of the Treasury made an assessment jointly against the Phillipses for

unpaid federal income taxes, penalties, and interest for the 2007 federal income tax year. (Defs.'
Counterstatement ¶ 7.) At the time each assessment was made, a delegate of the Secretary of the
Treasury gave the Phillipses proper notice of the assessment. (Defs.' Counterstatement ¶¶ 2, 5,
8.) Despite receiving such notice, the Phillipses did not pay the full amount of any of the tax fund
recovery penalty assessments. (Defs.' Counterstatement ¶¶ 3, 6, 9.)

      As a result of non-payment, following notice of each tax fund recovery penalty
assessment, federal tax assessment liens arose on the Property pursuant to 26 U.S.C. §§ 6321 and
6322 on the dates of each assessment. (Defs.' Counterstatement ¶ 10.) Notices of Federal Tax
Liens were recorded with the Suffolk County Clerk's Office regarding assessments against Linda
Phillips on October 25, 2005, against Robert Phillips on June 24, 2008 and October 14, 2009,
and against the Phillipses jointly on December 11, 2009. (*Id.* ¶ 11.) These four Notices of Federal
Tax Liens remain "valid and subsisting liens against the" Property. (*Id.* ¶ 12; *see also id.* ¶¶ 13–
14.)

      On February 3, 2011, Plaintiff filed an action in this Court against the Phillipses seeking
judgments against them in the amount of the tax fund recovery penalty assessments. Complaint,
*United States v. Linda B. and Robert S. Phillips*, No. 2:11-cv-545 (E.D.N.Y. Feb. 3, 2011), ECF
No. 1; *see also* Defs.' Counterstatement ¶ 15. On July 7, 2011, another judge of this Court
entered judgment in favor of Plaintiff against the Phillipses for the tax fund recovery penalty
assessments. (Defs.' Counterstatement ¶ 16.) On April 23, 2012, Plaintiff recorded certified
copies of the abstracts of the judgment with the Suffolk County Clerk's Records Office, creating
the following judgment liens on the Property: a judgment lien for Plaintiff against the Phillipses
in the amount of $4,197.86 with interest; a judgment lien for Plaintiff against Linda Phillips in
the amount of $970,922.49 with interest; and a judgment lien for Plaintiff against Robert Phillips

in the amount of $1,355,968.39 with interest. (Pl.'s Counterstatement ¶¶ 16–18; *see also* Defs.' Counterstatement ¶ 17.)

Several years later, the Phillipses failed to pay the County real estate taxes owed on the Property for tax year 2014/2015. (Pl.'s Counterstatement ¶ 25.) Defendants assert that the Phillipses continued to fail to "pay every year since"; however, Plaintiff denies this assertion on the grounds that the Phillipses "were no longer responsible for the property taxes after the County took title to the [P]roperty in 2020. (*Id.*) Defendants also assert that "[t]he unpaid real estate taxes [owed to the County for tax year 2014/2015] became a lien on the [P]roperty in January 2015." (Pl.'s Counterstatement ¶ 26.) Plaintiff contends that it lacks knowledge to dispute or concede this assertion and that the assertion calls for a legal conclusion. (*Id.*)

In 2015, the County did not provide notice to the Internal Revenue Service ("IRS") or the United States Department of Justice ("USDOJ") that it would be conducting a tax lien sale of the Property, even though Plaintiff had recorded judgement liens on the Property with the Suffolk County Clerk's Records Office. (Defs.' Counterstatement ¶ 20.) On December 4, 2015, the Suffolk County Comptroller conducted a tax lien sale of the Property, and the County "was deemed the preferred bidder and became the owner of the [County] tax lien." (Pl.'s Counterstatement ¶¶ 27, 29.)

In 2018 and 2019, the County did not provide the IRS or USDOJ notice of a right to redeem the Property. (Defs.' Counterstatement ¶ 23.) On December 30, 2019, Robert Phillips informed the County that there had been a fire at the Property, and that the Phillipses did not have insurance, did not want to keep the Property and, instead, wanted the County to take it. (Defs.' Counterstatement ¶ 25.) In January 2019, the County confirmed with Robert Phillips that the Phillipses did not want to keep the Property. (*Id.* ¶ 26.)

On April 14, 2020, the County sent notice to J.S. Funding Corp., the holder of the mortgage on the Property, informing it that if the 2014/2015 tax year property taxes owed to the County were not paid within fifteen days, then "the County would take a tax deed to the Property free and clear of any interest that J.S. Funding Corp. may have in it, severing J.S. Funding Corp.'s rights as a mortgagee." (*Id.* ¶ 27.) The County did not mail any notices of redemption rights to any other creditors with liens or judgments recorded against the Property, including Plaintiff. (*Id.* ¶ 29.)

On October 7, 2020, the County Comptroller executed an indenture conveying the Property's title to the County by tax deed. (*Id.* ¶ 31.) The tax deed was recorded on October 15, 2020. (*Id.* ¶ 33.) On November 5, 2021, Plaintiff's counsel contacted the County regarding the County's acquisition of title to the Property. (*Id.* ¶ 35.) Specifically, Plaintiff's counsel spoke with Redemption Supervisor Peter Belyea of the Suffolk County Department of Economic Development and Planning, who informed Plaintiff's counsel "that the County had not provided direct notice of redemption rights to the federal government." (*Id.* ¶¶ 35–36.)

Plaintiff's counsel sent an email to Belyea that same day, instructing Belyea that his office "must serve the IRS consistent with the provisions of 26 U.S.C. 7425." (*Id.* ¶ 36.) On November 10, 2021, a letter signed by Balyea was sent to the IRS, with a copy sent to the United States Department of Treasury. (*Id.* ¶¶ 38, 40–41.) The letter stated:

> This letter shall serve as Official Notice to you that, in the event of your failure to redeem the property within six months of the filing of this notice with the County Comptroller, the County Shall auction the property at a public sale, at the next available date, free and clear of any interests or rights of the assessed owner or you.

(*Id.* ¶ 39.) On January 18, 2022, Belyea emailed Plaintiff's counsel, "stating, among other things, that, if the United States wanted to redeem the Property, it must submit a redemption application no later than May 16, 2022." (*Id.* ¶ 42.)

## PROCEDURAL HISTORY

On May 5, 2022, Plaintiff filed the Complaint in this action. (Compl.) Defendants filed their Answer on July 13, 2022. (Defs.' Answer, ECF No. 21.)

On April 18, 2023, Plaintiff filed a motion for a pre-motion conference concerning its anticipated motion for summary judgment. (ECF No. 35.) On April 19, 2023, Judge Gary R. Brown, to whom this case was previously assigned, granted the motion and scheduled a pre-motion conference for June 20, 2023. (Elec. Order, Apr. 19, 2023.) On May 17, 2023, Defendants also filed a letter motion for a pre-motion conference concerning their anticipated summary judgment motion. (ECF No. 45.) On May 18, 2023, Judge Brown granted that letter motion as well. (Elec. Order, May 18, 2023.) On May 30, 2023, Plaintiff filed a response to Defendants' letter motion for a pre-motion conference. (ECF No. 46.)

On June 20, 2023, Judge Brown held a pre-motion conference regarding the Parties' anticipated cross-motions for partial summary judgment. (Min. Entry, June 20, 2023.) During the conference, Judge Brown instructed the Parties to file a joint status report within three weeks stating whether the Parties would like to appear for a settlement conference before Magistrate Judge James M. Wicks, and if not, proposing a briefing schedule for the anticipated cross-motions. (ECF No. 48.)

On July 11, 2023, Plaintiff and Defendants notified the Court that they did not request a settlement conference and, instead, proposed a briefing schedule, which Judge Brown so ordered. (ECF No. 49; Elec. Order, July 12, 2023.) The Parties subsequently filed requests to extend the

briefing schedule, which were granted by Judge Brown. (ECF Nos. 49, 50; Elec. Order, Aug. 30, 2023; Elec. Order, Oct. 3, 2023.)

On October 19, 2023, this action was reassigned to my docket. On November 11, 2023, Plaintiff and Defendants filed a joint motion to stay briefing on their cross-motions for summary judgment for 90 days because the Parties had reached an agreement in principle to resolve the case, which was granted. (ECF No. 52; Elec. Order, Nov. 8, 2023.) However, on January 30, 2024, the Parties filed a joint status report informing the Court that they failed to reach a settlement and requesting an additional extension of time to file cross-motions for summary judgment. (ECF No. 53.) I granted that request. (Elec. Order. Jan. 31, 2024.)

On May 23, 2024, the Parties' filed their fully-briefed Cross-Motions for Summary Judgment in accordance with this Court's recommended bundling practices. (Pl.'s Mot.; Defs' Opp'n, ECF No. 62; Pl.'s Reply, ECF No. 63; Defs.' Mot.; Pl.'s Opp'n, ECF No. 66, Defs.' Reply, ECF No. 67.) On May 24, 2024, Plaintiff filed a consent motion to correct Defendants' opposition to Plaintiff's Cross-Motion because Plaintiff had incorrectly filed the appendix to Defendants' opposition (ECF No. 62-1), which was granted. (ECF Nos. 68, 68-1; Elec. Order, May 28, 2024.)

## LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Kemp v. Regeneron Pharms, Inc.*, 117 F.4th 63, 68 (2d Cir. 2024). The moving party bears the burden of demonstrating the absence of a material question of fact. *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022). "A fact is material if it might affect the outcome of the suit under the governing law." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 980 (2d Cir.

2023), *rev'd on other grounds*, 145 S. Ct. 1020 (2025) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[2] A dispute of "material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). "In considering whether such a fact issue exists, the court is not to make credibility determinations or weigh the evidence." *Rupp v. Duffalo*, 91 F. 4th 623, 634 (2d Cir. 2024). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000)).

In order to defeat summary judgment, the non-moving party must set forth sufficient facts showing that there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c). The non-moving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Banes*, 593 F.3d 159, 166 (2d Cir. 2010); *see also Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-1220-CV, 2024 WL 3264125, at *2 (2d Cir. July 2, 2024) (summary order). "Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks*, 593 F.3d at 166. A court considering whether summary judgment is appropriate "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Cunningham*, 86 F.4th at 980; *see also Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 939 (2d Cir. 2024) ("We may find for the movant defendant only if we conclude that on the record presented, considered in the light most favorable to the non-movant plaintiff, no reasonable jury could find in the plaintiff's favor."). If "the party opposing

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

Where more than one party moves for summary judgment, "[e]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Schuyler v. Sun Life Assurance Co. of Canada*, No. 23-498, ___ F.4th ___, 2025 WL 2349010, at *4 (2d Cir. Aug. 14, 2025) (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)). Therefore, when evaluating Plaintiff's Cross-Motion, I draw all reasonable inferences against Plaintiff; when considering Defendants' Cross-Motion, I draw all reasonable inferences against Defendants.

## DISCUSSION

The primary dispute raised in the Parties' Cross-Motions is whether Plaintiff's judgment liens have priority over the County's tax lien on the Property. The Parties dispute whether this question is governed by a provision of the FTLA—specifically, Section 6323—or by the FDCPA—specifically, Section 3201.

Plaintiff seeks enforcement of its federal tax liens pursuant to 26 U.S.C. § 7403 ("Section 7403") and its judgment liens pursuant to 28 U.S.C. § 3202(e), through an order of judicial sale of the Property. (Pl.'s Mem. at 6, 10–12.) In support of its Cross-Motion, Plaintiff argues that its judgment liens are governed by the FDCPA and have priority over the County's tax liens because Plaintiff's judgment liens "were perfected earlier in time." (Pl.'s Mem. at 7; *see also id.* 13–19; Pl.'s Reply at 6–20.) Plaintiff further argues in support of its Cross-Motion and in opposition to Defendants' Cross-Motion that its federal tax liens remain attached to the Property and that Plaintiff is therefore also entitled to an order of sale to enforce its tax liens. (Pl.'s Opp'n

at 17–20; *see also* Pl.'s Mem. at 11 n.14.)[3] In opposition to Defendants' Cross-Motion, Plaintiff also argues that Defendants cannot enforce the County's tax lien on the Property because that lien was extinguished when the County took "fee simple ownership" of the Property. (Pl.'s Opp'n at 17–20.)

In support of its own Cross-Motion and in opposition to Plaintiff's Cross-Motion, Defendants assert that the FDCPA is inapplicable to Plaintiff's judgment liens. According to Defendants, the FTLA governs the priority of Plaintiff's tax liens and judgment liens in relation to the County's tax liens because the FDCPA does not apply when the FTLA specifies procedures for recovering on a judgment or debt, as it does here. (Defs.' Mem. at 8–10; *see also* Defs.' Opp'n at 2–6.) Defendants argue that the County's tax lien has priority over Plaintiff's tax and judgment liens because the FTLA provides "superpriority" to local real property tax liens and Plaintiff's tax and judgment liens "both stem from the tax liabilities pursuant to . . . the Internal Revenue Code." (Defs. Mem. at 5–8 (citing 26 U.S.C. § 6323(b)(6)); Defs.' Opp'n at 2–6.) And, in support of its own Cross-Motion, Defendants further argue that the County's tax liens remain attached to the Property even though the County took title to the Property through a tax deed conveyance in 2020. (Defs. Mem. at 11.)

For the reasons set forth below, according to the plain text of the FDCPA and the FTLA, the priority of Plaintiff's judgment liens in relation to the County's tax liens is governed by the

---

[3] In its brief in support of its Cross-Motion for Summary Judgment, Plaintiff states that while it had "argued in its pre-motion filings that [its] [f]ederal [t]ax [l]iens also have priority over the County's claims," it "has decided not to make this separate argument in its summary judgment motion because the priority of the [j]udgment [l]iens should be dispositive of the case." (Pl.'s. Mem at 19 n.19 (citing ECF No. 35 at 2; ECF No. 46 at 2).) Plaintiff also states that it "reserves the right to argue that the [f]ederal [t]ax [l]iens have priority at a later stage of this litigation," if a ruling on the Parties' Cross-Motions do not resolve this action. (*Id.*)

FDCPA, and under that statute, Plaintiff's judgment liens have priority over the County's later-in-time tax liens. Furthermore, Plaintiff is entitled to an order of judicial sale because the FDCPA permits Plaintiff to rely on Section 7403's procedures for securing a judicial sale and Plaintiff has complied with the statutory requirements to invoke such procedures. By contrast, Defendants fail to establish that, as a matter of law, the County's tax liens remain attached to the Property after the County obtained title to the Property through a tax deed conveyance.

Accordingly, the Court grants Plaintiff's Cross-Motion for Summary Judgment in its entirety, orders a judicial sale of the Property, and orders that the proceeds from such a sale will first be used to satisfy Plaintiff's judgment liens before being applied to any County tax liens. The Court denies Defendants' Cross-Motion as to the request for a judgment finding that the County's tax liens have priority over Plaintiff's judgment liens and federal tax liens, and dismisses as moot Defendants request for an order directing a judicial sale of the Property.

## I.    The Status and Priority of the Parties' Liens

### A.    Plaintiff's Tax Liens

The Parties agree that Plaintiff's federal tax liens remain attached to the Property and that the priority of these liens in relation to local real property tax and special assessment liens is governed by Section 6323(b)'s superpriorities. (Pl.'s Mem. at 17; Defs.' Mem. at 1–2.) Plaintiff's federal tax liens attached to the Property when Plaintiff filed with the Suffolk County Clerk's Office the Notices of Federal Tax Liens against: Linda Phillips on October 25, 2005; Robert Phillips on June 24, 2008 and October 14, 2009; and the Phillipses, jointly, on December 11, 2009. (*See* Defs.' Counterstatement ¶ 11–14.) These federal tax liens remain "valid and subsisting liens against the" Property. (Defs.' Counterstatement ¶ 12.)

B. <u>Plaintiff's Judgment Liens</u>

The Parties agree that Plaintiff's judgment liens were created pursuant to Section 3201(a) of the FDCPA. (Defs.' Counterstatement ¶ 17.) The Parties also agree that these judgment liens attached to all of the Phillipses' real property in the County, including the Property, on April 23, 2012, when Plaintiff "recorded certified copies of abstracts of the judgment . . . in the Suffolk County Clerk Records Office in the manner in which a notice of tax lien would be filed under 26 U.S.C. 6323(f)." (Defs.' Counterstatement ¶ 17.) Defendants do not dispute the fact that Plaintiff's judgment liens remain attached to the Property. (Pl.'s Mem. at 6–7; Defs.' Opp'n at 1– 2; Defs.' Reply at 4.)

C. <u>The County's Tax Liens</u>

The undisputed record shows that a tax lien in favor of the County was created on January 1, 2015. The Phillipses "failed to pay the real estate taxes assessed on the . . . Property for tax year 2014/2015 . . . ." (Pl.'s Counterstatement ¶ 25.) A letter from the Suffolk County Comptroller dated August 9, 2018, informed the Phillipses that they had failed to pay the real property tax on the Property for the 2014/2015 tax year. (Rogers Decl. Ex. I, ECF No. 65-12.) The Suffolk County Comptroller's Computation of Monies, dated January 12, 2023, shows that the Phillips have not paid county real estate taxes on the Property for the 2014, 2015, 2016, 2017, 2018, or 2019 tax years. (Rogers Decl. Ex. G, ECF No. 65-10). Under New York law, unpaid local real property taxes "become a lien" on the real property "as of the first day of January of the fiscal year for which levied and shall remain a lien until paid." N.Y. Real Prop. Tax Law § 902. Accordingly, the undisputed record shows that unpaid real property taxes for the 2015/2015 tax year became a lien on the Property as of January 1, 2015, the first day of the January in the 2014/2015 fiscal year. (*See* Pl.'s Counterstatement ¶ 25.)

13

D.  Prioritization of Plaintiff's Judgment Liens in Relation to the County's Tax Liens

The Parties' dispute whether the priority given to Plaintiff's judgment liens in relation to the County's tax liens are governed by the FTLA or the FDCPA. Plaintiff argues that the FDCPA controls and that the FTLA is inapplicable. According to Plaintiff, the plain text of Section 6323(b)(6) establishes superpriorities applicable only to federal *tax* liens—not a procedure for the recovery of judgment liens that is inconsistent with the FDCPA. (Pl.'s Mem. at 16–17; Pl's Opp'n at 6–7.) Specifically, Plaintiff emphasizes that its judgment liens were created pursuant to FDCPA Section 3201 and that the text of Section 6323(b)(6) expressly stating that the provision is applicable to "lien[s] imposed by section 6321" of the Internal Revenue Code does *not* provide that Section 6323 applies to judgment liens created pursuant to Section 3201. (Pl.'s Mem. at 16–17 (quoting 26 U.S.C. § 6322(b)(6)).) According to Plaintiff, its judgment liens have priority over the County's tax liens under Section 3201(b) because the judgment liens were "perfected earlier in time." (Pl.'s Mem. at 7 (citing 28 U.S.C. § 3201(b)); Pl.'s Opp'n at 7–8 (same).)

Defendants argue that Plaintiff's tax liens and judgment liens are both governed by the FTLA because both sets of liens "stem from the tax liabilities pursuant to § 6672 of the Internal Revenue Code." (Defs.' Opp'n at 2.) According to Defendants, the FTLA is a federal law that provides "compressive procedures for recovering a tax debt" and conflicts with the FDCPA's procedures, and accordingly, the FDCPA's limitation provision, 28 U.S.C. 3001(b), applies. (*Id.*) Defendants rely on portions of the legislative histories of the FTLA and FDCPA to argue that Congress intended to provide local tax liens priority over federal tax liens. (Defs.' Opp'n at 3–4.) They further argue that Plaintiff's position is arbitrary as it is inconsistent with stipulations into which Plaintiff entered in two other actions, where Plaintiff agreed that county property tax liens

would be satisfied before Plaintiff's federal tax liens: *United States v. Morrison*, No. 2:23-cv-3399 (E.D.N.Y.); and *United States v. Sygitowicz*, No. 15-cv-405 (W.D. Wash.). (Defs.' Mem. at 10.)

### i.   Legal Standards

A statute generally "should be enforced according to its plain and unambiguous meaning." *Greathouse v. JHS, Sec. Inc.*, 784 F.3d 105, 111 (2015). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (quotation marks omitted). "If the meaning is plain, the inquiry ends there." *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016); *see also Williams v. MTA Bus Co.*, 44 F.4th 115, 127 (2d Cir. 2022) (same). When the plain text of a statute is ambiguous, a court must apply "canons of statutory construction for assistance in interpreting the statute." *Rowland*, 826 F.3d at 108. The court may "resort to legislative history only if, after consulting canons of statutory [construction], the meaning remains ambiguous." *Id.* (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005)); *see also United States v. Peterson*, 394 F.3d 98, 105 (2d Cir. 2005) ("[E]ven if the statute were ambiguous, we would look to traditional canons of statutory construction to resolve the ambiguity, before looking to legislative history and interpretive regulations."). If the canons of statutory interpretation and legislative history do not resolve the ambiguity, the court will "afford[] some degree of weight to the interpretations of the agencies charged with enforcing [the statute]." *Greathouse*, 784 F.3d at 113.

### ii.   Analysis

Resolving the Parties' dispute first requires a close review of the text of the relevant FDCPA and FTLA provisions.  The plain text of these statutes supports the conclusion that the

FDCPA governs the priority of Plaintiff's judgment liens, which were created pursuant to Section 3201, in relation to the County's tax liens. Further the specific context in which Section 3201 and Section 6323 are used and the broader context of each statute also support this conclusion. Applying the FDCPA's first-in-time rule, Plaintiff's judgment liens created under Section 3201 have priority over the County's tax liens.

The FDCPA "provides the *exclusive* civil procedures for the United States . . . to recover a *judgment* on a debt." 28 U.S.C. § 3001(a) (emphasis added). Despite this broad language, the applicability of the FDCPA is circumscribed by its limitations provision, which provides: "To the extent that another Federal law specifies *procedures* for recovering on a claim or a judgment for a debt arising under such law, those *procedures* shall apply to such claim or judgment to the extent those procedures are *inconsistent* with" the FDCPA. 28 U.S.C. § 3001(b) (emphasis added). The FDCPA also provides, however, that it "shall not be construed to curtail or limit the right of the United States . . . to collect taxes or to collect any other amount collectible in the same manner as a tax." 28 U.S.C. § 3003.

Section 3201 of the FDCPA governs the creation of liens from "[a] judgment in a civil action" and provides that a civil judgment "shall create a lien on all real property of a judgment debtor on filing a certified copy of the abstract of the judgment in the manner in which a notice of tax lien would be filed under" Section 6323(f)(1) and (2). 28 U.S.C. § 3201(a). Section 3201 provides that such a judgment lien "shall have priority over any other lien or encumbrance which is perfected later in time." 28 U.S.C. § 3201(b). The text of the FDCPA does not contain any exception for judgment liens created from judgments obtained by the federal government in a tax case.

Section 6323 of the FTLA, on the other hand, does not reference judgment liens created pursuant to Section 3201, but identifies eight types of property interests that receive "[p]rotection," meaning priority, over "*liens imposed by section 6321*" of the Internal Revenue Code, "even though notice" of the Section 6321 lien "has been filed." 26 U.S.C. § 6323(b) (emphasis added). Section 6321, in turn, provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321.

The eight enumerated categories of property interests listed in the FTLA receive what is called "superpriority" over Section 6321 liens. (ECF No. 68-1 at 11 (S. Rep. No. 80-1708, at 5).) One category of property interests afforded superpriority are "[r]eal property tax and special assessment liens," 26 U.S.C. § 6323(b)(6), which are given priority "wherever state law would grant the local property tax lien a priority over a prior competing interest held by any other person," *United States v. Gen. Douglas MacArthur Senior Vill., Inc.*, 470 F.2d 675, 678 (2d Cir. 1972). The text of neither Section 6321 nor Section 6323 refers to judgment liens created pursuant to Section 3201, whether or not such judgment liens originate from an a judgment in a civil action to collect federal taxes.

Neither Section 6321 nor Section 6323 expressly state that, under the FTLA, local real property taxes and special assessments are afforded superpriority over judgment liens created pursuant to Section 3201. As noted, the FTLA does not mention judgment liens of any kind. Although Section 6323 provides that liens arising from local real property taxes and assessments have priority over federal tax liens, both Section 6321 and Section 6323 are silent on whether these property interests are afforded priority over judgment liens created under Section 3201.

17

Moreover, as noted, Section 3201 itself makes clear that any judgment liens created under that provision "shall have priority over any other lien or encumbrance which is perfected later in time," and does not create any exception to this rule. 28 U.S.C. § 3201(b). Additionally, the FDCPA emphasizes that it "shall not be construed to curtail or limit the right of the United States . . . to collect taxes or to collect any other amount collectible in the same manner as a tax." 28 U.S.C. § 3003.

Defendants fail to show that the FTLA falls within the FDCPA limitations provision, which applies when a different federal law "specifies *procedures* for recovering on a claim or a judgment for a debt arising under such law" that are "*inconsistent* with" the FDCPA. 28 U.S.C. § 3001(b) (emphasis added). In such a situation, the other federal law, and not the FDCPA, would establish the procedures for recovering on a claim or judgment.

Here, the plain and unambiguous text of the FDCPA and FTLA establishes that the priority of Plaintiff's judgment liens is governed by the FDCPA and not the FTLA because the latter does not set forth any specific *procedure* for recovering on a judgment lien established under Section 3201. Accordingly, the statutory interpretation inquiry should end there. *See Rowland*, 826 F.3d at 108 ("If the meaning is plain, the inquiry ends there."). Defendants, however, point to select portions of the FTLA's legislative history, a portion of the Internal Revenue Service Manual ("IRS Manual"), caselaw, and stipulations by Plaintiff in other cases to support their position that the FTLA governs the relative priority of Plaintiff's judgment liens and the County's tax liens. However, none of these authorities support Defendants' position.

The legislative history upon which Defendants rely concerns federal *tax liens*, not federal *judgment liens*. Defendants rely on the Report of the Senate Committee on Finance on the FTLA ("Senate Report") to argue that Congress deemed the "FTLA . . . necessary 'as a practical

matter' to streamline the transfer of real property where a federal lien exists because 'a purchaser cannot take the property free of these local liens,' namely, real estate taxes and special assessments." (Defs.' Opp'n at 4 (citing ECF No. 68-1 at 11 (S. Rep. No. 80-1708, at 5 (1966))).) Defendants selectively omit text in the Senate Report, in an attempt to convey that Congress intended for FTLA to apply to a wide array of federal liens in addition to federal tax liens created under Section 6231. (*Compare* Defs.' Opp'n at 4, *with* ECF No. 68-1 at 11 (S. Rep. No. 80-1708, at 5) (1966)).) The paragraph of the Senate Report from which Defendants selectively quote states, in full:

> (b) Real property taxes and special assessments.—A fourth new category of superpriority is provided for real property taxes and special assessments. As a practical matter, real property taxes and special assessments imposed by local governmental authorities presently limit the value of the security real property affords to Federal *tax liens*. This occurs because a purchaser cannot take the property free of these local liens. Consequently, any tax sale purchaser could be expected to take into account in his bid any outstanding local property taxes and special assessments. This situation is recognized in the bill and priority is given to these taxes and assessments even as against a filed Federal *tax lien*. However, the priority is provided only where local law gives similar priority to real property taxes and assessments as against holders of security interests. "Assessment" is used her in the general sense of local law (not in the more limited sense usually employed in the tax lien provisions of the Internal Revenue Code).

(ECF No. 68-1 at 11 (S. Rep. No. 80-1708, at 5 (1966)) (emphasis added).) The Senate Report refers to federal *tax liens*. (*Id.*) Accordingly, the Senate Report does not contradict the plain text reading of the FDCPA and the FTLA set forth above and provides no support for Defendants' position that Congress enacted the FTLA to provide local real property taxes and special assessments with superpriority status over federal *judgment liens* created under Section 3201.

The legislative history of the FDCPA, on the other hand, supports Plaintiff's position that Congress intended the FDCPA, not the FTLA, to govern the priority of federal judgment liens in relation to local real property tax liens. Congress considered and rejected an earlier draft of the

FDCPA bill proposed in the House of Representatives, which included proposed text in Section 3201 that, if enacted, would have established that any lien created as a result of "[a] judgment obtained by the United States in a tax case" would be "a lien as provided in section 6321 of the Internal Revenue Code," rather than a judgment lien created pursuant Section 3201(a). H.R. Rep. 101-736, 1990 WL 200442 (quoting full draft text of H.R. 5640). Likewise, an earlier Senate version of the FDCPA bill included proposed text in Section 3201 under which "[a] judgment obtained by the United States in a tax case" would constitute "a lien co-extensive with any lien created prior to judgment under section 6321 of the Internal Revenue Code." 135 Cong. Rec. S14684-01, 1989 WL 187966 (quoting full draft text of S. 84). In its 1990 enactment of the FDCPA, Congress rejected both proposals—either of which, if enacted, would have ensured that judgment liens obtained by the federal government in tax cases were equivalent to federal tax liens created pursuant to Section 6321 for the purposes of determining priority in relation to liens seeking to collect local real estate taxes. Congress did so with the knowledge that the failure to incorporate these proposals made the FTLA's superpriorities, which had been enacted twenty-four years earlier in 1966, inapplicable to civil judgment liens obtained by the federal government in tax cases.

Defendants also rely, without success, on a portion of the IRS Manual to support their position that the FTLA controls the priority of Plaintiff's judgment liens in relation to the County's tax liens. Defendants cite the portion of the IRS Manual entitled "Section 2. Federal *Tax* Liens," which simply states that the Internal Revenue Code, and specifically the FTLA, grants "certain specified state and local tax liens against real property . . . priority over . . . federal tax lien[s]" when the FTLA's conditions are met. (Rodgers Decl. Ex. Q. at 1, ECF No. 65-18 (emphasis added); Defs.' Mem. at 6 (quoting Rodgers Decl. Ex. Q at 40).)

Although Plaintiff is correct that the IRS Manual "confers no legal rights and is not enforceable" (Pl.'s Opp'n at 10 n.5), it may still provide persuasive authority. *See United States v. N.Y. Tele. Co.*, 644 F.2d 953, 959 n.10 (2d Cir. 1981) ("An IRS manual . . . does not have the effect of law, especially where . . . the issue concerns the applicability of federal law," but it may be "informative."). Nevertheless, as with the portions of the FTLA legislative history on which Defendants rely, the portion of the IRS Manual identified by Defendants refers only to federal *tax* liens—not federal *judgment* liens that arise from civil lawsuits to collect federal taxes. Thus, the section of the IRS Manual on which Defendants rely does not alter this Court's interpretation of the plain text of the relevant FDCPA and FTLA provisions.

Finally, Defendants rely on numerous decisions of courts within and outside of the Second Circuit, none of which address the question of whether the FTLA applies to federal judgment liens. All of these cases are distinguishable or otherwise inapposite.

First, *United States v. George* does not address the issues in this action. 144 F. Supp. 2d 161 (E.D.N.Y. 2001); *see also* Defs.' Mem. at 9, Defs.' Reply at 2–3; Defs.' Opp'n at 4. In *George*, the court held that "the provisions of the FDCPA [were] not controlling" on the United States' request for an order permitting garnishment of the defendant's disposable wages, because the Higher Education Act of 1965 governed the amount of garnishment the United States could seek specifically "to collect a defaulted student loan." *George*, 144 F. Supp. 2d at 163. The court did not discuss the FDCPA's limitation provision, 28 U.S.C. § 3001(b), but instead found that since the Health Education Act provided "the more specific limitation" on "the proper amount of garnishment for repayment of student loans," that statute, rather than the FDCPA's more general garnishment provisions, applied. *Id*. at 164. Here, the FTLA's text does not set forth a "more specific limitation" on what Plaintiff may seek with respect to recovery on its judgment liens,

and, as discussed, does not even mention judgment liens created pursuant to Section 3201, let alone establish specific procedures for recovering on those judgment liens.

Second, Defendants rely on numerous cases that concern the priority of federal *tax* liens—not *judgment* liens—and are therefore inapposite. (*See* Defs' Mem. at 9; Defs.' Opp'n at 3–4.) In *Estate of Friedman v. Cadle Company*, the court concluded that the FTLA controlled the priority of a federal tax lien over the expenses of the plaintiff's estate, which were incurred after the federal tax lien was recorded. No. 08-cv-488, 2009 WL 7271206, at *3–4 (D. Conn. Sept. 8, 2009), *report and recommendation adopted*, 2009 WL 7271208 (D. Conn. Sept. 29, 2009). In *Western National Bank v. United States*, the Fifth Circuit held that a federal tax lien had priority over a later recorded state fuel tax lien, because Congress, through the FTLA, did not grant state fuel taxes superpriority over federal tax liens like it did for state real property tax and special assessment liens. 8 F.3d 253, 255–56 (5th Cir. 1993) (holding that "the first-in-time rule determines the priority of conflicting state and federal claims for taxes when a section 6323 provision does not apply") As noted, neither of these cases concerned federal judgment liens created under Section 3201, which are at issue here.

Third, while Defendants correctly assert that courts in the Second Circuit have held that the FDCPA does not provide the statute of limitations applicable to certain actions brought by the federal government to collect taxes (Defs. Opp'n at 3), Defendants rely on decisions that do not address whether the FDCPA applies to actions by the United States to enforce its judgment liens. In *United States v. Carney*, another judge of this Court found that the FDCPA's statute of limitations did not apply to the federal government's state law claim to, among other things, "foreclose on federal *tax liens* on two parcels of real property," because "Congress expressly indicated" in the FDCPA "that the government's remedies [to collect taxes] were not to be

curtailed." 796 F. Supp. 700, 701, 703 (E.D.N.Y. 1992) (emphasis added). In *United States v. Letscher*, the court found that the FDCPA's statute of limitations did not apply to the federal government action "to reduce to judgment an assessment of federal tax liabilities," because the FDCPA explicitly states it "shall not be construed to curtail or limit the right of the United States . . . to collect taxes." 83 F. Supp. 2d 367, 368, 378 (S.D.N.Y. 1999) (quoting 28 U.S.C. § 3003(b)(1)). Neither of these decisions concerned an action by the United States to enforce judgment liens already procured through prior civil litigation. Nor do they address the question before this Court: whether the FDCPA or FTLA govern the priority given to federal judgment liens created under Section 3201 in relation to local real property tax liens.

Fourth, Defendants rely on decisions of courts from outside the Second Circuit that also do not address the applicability of the FDCPA to litigation by the federal government to enforce its judgment liens.[4] None of these cases demonstrate that the FTLA, rather than the FDCPA, establishes the priority given to federal judgment liens in relation to County real property tax and assessment liens or that the County's liens have priority over the federal judgment liens in this action.

In *McLain v. McLain*, the court held that the FDCPA's statute of limitations did not apply to the federal government's fraudulent conveyance claim based on the FDCPA provision stating that the statute, "[b]y its own terms, . . . does not apply to Government actions to collect taxes."

---

[4] In addition to the cases discussed in the subsequent paragraph, Defendants rely on the sixth page of *United States v. Bigley*, No. 14-cv-0729, 2019 WL 3944614 (D. Ariz. Aug. 21, 2019). (Defs.' Reply at 3.) Defendants' reliance on this case is unpersuasive, however, both because *Bigley* did not concern federal judgment liens and because the decision in *Bigley* is only five-pages long. Rather, *Bigley* concerned a motion to strike the federal government's notice of levy following judgment on "outstanding federal tax liabilities assessed against the . . . defendants" and foreclosure on "federal *tax* liens on real property." *Bigley*, 2019 WL 3944614 at *1 (emphasis added).

No. 16–cv–36, 2017 WL 713548, at *5 (D. Mont. Feb. 23, 2017). In *United States v. Brown*, the Tenth Circuit held that the statute of limitations provided in the Internal Revenue Code—rather than the shorter statute of limitations set forth in the FDCPA—applied to the federal government's suit against the defendants for unpaid income taxes. 23 Fed. App'x. 955, 956 (10th Cir. 2001). In *United States v. Dawes*, the Tenth Circuit rejected the argument that the federal government "must bring" suit to "reduce to judgment federal tax assessments" and "foreclose federal tax liens" under the FDCPA on the basis of the FDCPA's limitation provision and because FDCPA "expressly provides that it does not limit the United States' right to collect taxes under federal law." 161 Fed. App'x. 742, 744, 746 (10th Cir. Dec. 5, 2005). None of these decisions addressed how to prioritize federal judgment liens created under Section 3201 in relation to local real property tax liens on the same property.

*McKean v. United States* is similarly inapposite, addressing only the question of what statute governs recovery of federal tax liabilities through a levy—not through enforcement of federal judgment liens. 563 F. Supp. 2d 182, 187 (D.D.C. 2008).[5] *United States v. Cam*, is similarly inapposite. No. 22-cv-20885, 2022 WL 18023419 (S.D. Fla. Nov. 7, 2022). The court in *Cam* held only that the Internal Revenue Code's procedures govern *the judicial sale* of a property encumbered by a federal judgment lien created pursuant to Section 3201 and a federal

---

[5] The plaintiff in *McKean* challenged the federal government's placement of a levy on his bank account and social security benefits due of unpaid tax liabilities on several grounds, including that the levy was governed by the FDCPA, not the Internal Revenue Code. *Id.* at 183, 187. The court held that since the Internal Revenue Code "provides exclusive procedures to govern the government's collection of *unpaid tax liabilities*," the FDCPA's limitation provision applied, and the Internal Revenue Code governed the federal government's levy. *Id.* at 187 (emphasis added). The court did not address, much less conclude, that the Internal Revenue Code, or more specifically, the FTLA, provides "exclusive" or, as Defendants assert, "specific" procedures for the recovery of federal judgment liens and thereby displaces the FDCPA's provisions governing prioritization of liens. *McKean*, 563 F.Supp.2d at 187; Defs.' Mem. at 4.

tax lien created pursuant to Section 6321, relying on the FDCPA provision indicating that the statute does not "curtail or limit the right of the United States . . . to collect taxes." *Id.* at *5 (quoting 28 U.S.C. § 3003(b)(1)). *Cam* did not address the question of the prioritization given to the federal judgment lien in relation to any local real estate property tax liens.

*United States v. Cromar* is distinguishable because it did not concern the enforcement of federal judgment liens at all. 807 F. App'x 821, 822–823 (10th Cir. 2020). In *Cromar*, the Tenth Circuit affirmed a district court's issuance of an order of foreclosure and for judicial sale in an action brought by the federal government "to reduce to judgment assessments . . . for unpaid income taxes and to foreclose tax liens through a sale of [defendant's] real property." *Id.* It rejected defendants' argument that the FDCPA required a pre-sale hearing because the FDCPA did "not apply to a proceeding to collect income taxes brought under 26 U.S.C. §§ 7402 and 7403." *Id.* By contrast, Plaintiff brought this action to enforce *both* judgment liens pursuant to Section 3201 and federal tax liens pursuant to 26 U.S.C. §§ 7402 and 7403. (Compl. ¶¶ 43–44 ("The United States is entitled to enforce the federal tax liens . . . against the Real Property pursuant to 26 U.S.C. §§ 7402(a) and 7403, and 28 U.S.C. § 3202(e). . . . Alternatively, the United States is entitled to enforce the Judgment Lien[s] . . . against the Real Property pursuant to 28 U.S.C. 3201."); *see also* Pl.'s Reply at 1–2.)

Finally, Defendants' reliance on stipulations into which Plaintiff entered in *Morrison* and *Sygitowicz* is unpersuasive. Defendants provide no authority to support their position that Plaintiff's entry into stipulations to further the resolution of other actions not before this Court conveys the United States' position on the statutory interpretation question before this Court: whether the FDCPA or the FTLA governs the prioritization of Plaintiff's judgment liens in relation to the County's real estate tax liens. In furthering the resolution of litigation by

stipulation, parties may make strategic decisions not to pursue all rights to which they believe they are entitled. *See, e.g., Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986) ("A decision to stipulate to a dismissal of the entire cause of action at that point could well have been based on a conscientious and informed estimate by counsel of plaintiff's legal chances of success, balancing the benefits of continued litigation against its prospective costs."). Moreover, as discussed in detail below, Plaintiff's positions in *Morrison* and *Sygitowicz* do not resolve the statutory interpretation question before this Court.

In *Morrison,* Plaintiff brought suit to "reduce to judgment unpaid federal tax liabilities owed by" the defendant taxpayer and to "enforce federal tax liens against 10 parcels of real property." (Rodgers Decl. Ex. R at 1, ECF No. 65-20.) Plaintiff entered into a stipulation regarding the priority of its liens versus liens held by the County and the Town of Brookhaven. (*Id.* at 15–18.) Plaintiff agreed that the sale proceeds would first satisfy "any real property taxes and/or special assessments due" to the County and Town of Brookhaven "with regard to the Property that are entitled to priority over the federal tax liens pursuant to 26 U.S.C. § 6323(b)(6)," then to the County to satisfy any of its judgment liens, and finally to Plaintiff to satisfy its "federal tax liens." (*Id.* at 16–17.) While the *Morrison* complaint alleges that Plaintiff had a recorded judgment lien against the defendant taxpayer, it did not bring a claim to enforce that judgment lien. (*Id.* at 12–13.) In fact, as Defendants concede in their brief in support of their Cross-Motion, in *Morrison*, some of the County's tax liens *predated* the recording of Plaintiff's judgment lien. (*See* Defs.' Mem. at 10 (stating that Plaintiff's judgment lien in *Morrison* was recorded in 2021, but that the County's earliest tax liens were created in 2020).) In *Morrison*, the stipulation did not address the priority of Plaintiff's *judgment* lien in relation to the county and municipal property tax and special assessment liens at issue. Accordingly, the stipulation in

*Morrison* has no bearing on this Court's resolution of the question of how to prioritize Plaintiff's judgment liens and the County's real property tax liens in this action.

Furthermore, the stipulation in *Sygitowicz* does not assist Defendants in this action both because it involved a nominee issue absent here and because the stipulation did not address the prioritization of judgment liens created under Section 3201 in relation to local real estate tax liens. There, Plaintiff brought suit to, among other things, foreclose on real property that it asserted was subject to federal tax and judgment liens after the defendant taxpayers allegedly, fraudulently conveyed the property to two nominees named as codefendants. (Rodgers Ex. R at 1–2, ECF No. 65-19.) Plaintiff and the defendant county treasurer, a potential holder of a lien against the real property, entered into a stipulation in which Plaintiff "recognize[d]," "[p]ursuant to 26 U.S.C. § 6323(b)(6)," that the county's tax liens were a "superior interest" (*id.* at 17–19), and committed to "include in any proposed order of sale a provision that the net proceeds of sale . . . shall be applied to satisfy the" county's tax liens before "the United States' interest secured by *federal tax liens*," (*id.* at 18 (emphasis added).) The stipulation did not determine whether Plaintiff's tax and judgment liens remained attached to the property at issue after the alleged fraudulent conveyance—that issue was resolved by a bench trial. *See id.* at 17–19; Minute Entry, *United States v. Sygitowicz*, No. 15-cv-405 (W.D. Wash. June 1, 2016). Further, the stipulation did not determine whether Plaintiff's *judgment* liens were subordinate to the county treasurer's tax liens, but only dealt with the priority of the county's tax liens over Plaintiff's *tax* liens. (*Id.* at 18.)

Neither *Morrison* nor *Sygitowicz* concerned Plaintiff's assertion that any judgment liens created under Section 3201 have priority over local real estate tax and special assessment liens. The fact that the government stipulated that certain local taxes and assessments were to be

prioritized over the satisfaction of Plaintiff's federal tax liens in those cases simply does not convey a concession that the text of the relevant FDCPA and FTLA provisions *requires* local real estate tax liens to be prioritized above judgment liens created under Section 3201. By contrast, there are numerous reasons why Plaintiff may have chosen not to assert the priority of its judgment liens in both cases *without* making any such concessions.[6]

Therefore, as a matter of law, the priority given to Plaintiff's judgment liens created under Section 3201 in relation to the County's real property tax liens is governed by the FDCPA, not Section 6323.

Applying the FDCPA to the undisputed facts, Plaintiff's judgment liens have priority over the County's tax liens. There is no dispute that Plaintiff's judgment liens were created and attached to the Property on April 23, 2012, and that the County's tax liens were perfected on January 1, 2015. (Defs.' Counterstatement ¶ 17.) Since the County's tax liens were "perfected later in time" than Plaintiff's judgment liens, pursuant to the FDCPA, Plaintiff's judgment liens have priority over the County's liens. 28 U.S.C. 3201(b).

For all of these reasons, I grant Plaintiff's Cross-Motion and deny Defendants' Cross-Motion on the issue of the prioritization of Plaintiff's judgment liens in relation to the County's tax liens.

## II.    Order of Sale

In support of its Cross-Motion, Plaintiff contends that it may enforce it judgment liens

---

[6] For example, in *Sygitowicz*, by entering into the stipulation, Plaintiff also secured the voluntary dismissal with prejudice of all claims against the county treasurer. (Rodgers Decl. Ex. S at 19.) In *Morrison*, as discussed, Plaintiff chose not to bring a claim to enforce its judgment lien, and the record does not provide a reason for this decision. (*See generally* Rodgers Decl. Ex. S, ECF No. 65-20.)

through Section 7403(c) even though the judgment liens arise under Section 3201, which has its own procedures for enforcement of a judgment lien.[7] Plaintiff relies on the FDCPA provision stating that the statute "shall not be construed to curtail or limit the right of the United States under any other Federal law . . . to collect taxes or to collect any other amount collectible in the same manner as a tax." (Pl.'s Mem. at 12 (quoting 28 U.S.C. § 3003(b)).) Plaintiff also argues that the FDCPA "preserve[s]" its "right 'to appoint or seek the appointment of a receiver," that it "has the right to sell the Property through a receiver under [28 U.S.C.] § 7403(d)," and that Plaintiff "may exercise this right regardless of whether the Property is sold pursuant to the Federal Tax Liens or the Judgment Liens." (*Id.* at 12 n.15 (quoting 28 U.S.C. 3003(b)(3)).)

In opposition to Plaintiff's Cross-Motion, Defendants argue that Plaintiff, as a lienholder, "does not have any legal right to sell the Property," even with the consent of the Phillipses, because the County, not Plaintiff or the Phillipses is the "titleholder" of the Property. (Defs. Opp'n at 1.) Defendants also assert that Plaintiff "failed to provide the Phillipses and the County with the required notice that the Property was being taken under the FDCPA." (*Id.* (citing 28 U.S.C. § 3202(b)–(c)).)

On reply in support of its Cross-Motion, Plaintiff argues that Section 7403 "allows the United States to sue to 'subject any property' of a delinquent taxpayer, or against which a federal tax lien has attached regardless of current ownership, 'to the payment of such tax or liability' underlying the lien." (Pl.'s Reply at 2–3 (quoting 26 U.S.C. § 7403(a).) Plaintiff asserts that because it has followed all of the statue's requirements, including by joining as defendants all

---

[7] Section 3201 provides that "[o]n proper application to a court, the court may order the United States to sell, in accordance with" 28 U.S.C. §§ 2001 and 2002, "any real property subject to a" judgment lien. 28 U.S.C. § 3201(f)(1).

entities with liens or interests in the Property, this Court may decree a sale of the Property. (*Id*.) Plaintiff also argues that it has established its right to sell the Property under Section 3201, despite Defendants' assertions to the contrary, because 28 U.S.C. 3202(b)'s notice requirement is not applicable to an action "where, as here, the United States has also requested a judicial sale under 26 U.S.C. §[ ]7403." (Pl.'s Reply at 3.)

The text of the FDCPA and the Internal Revenue Code establishes that Plaintiff retains the right to seek an order of judicial sale pursuant to Section 7403 to enforce its judgment liens when it seeks to enforce federal tax liens in the same action. The FDCPA provides that it "shall not be construed to curtail or limit the *right* of the United States under any other Federal law . . . (1) to collect taxes or to collect any other amount collectible in the same manner as a tax" or "to appoint or seek the appointment of a receiver." 28 U.S.C. § 3003(b)(3) (emphasis added). Section 7403(a) gives Plaintiff the right to file a civil action in a federal district court to enforce a federal tax lien. 26 U.S.C. § 7403(a). In such an action, under Section 7403(c):

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate *all matters* involved therein and finally determine the merits of *all claims to and liens* upon the property, and, in all cases where a claim or interest of the United States therein is established, *may decree a sale of such property*, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

*Id*. § 7403(c) (emphasis added).

Here, the FDCPA permits Plaintiff to rely on Section 7403's procedures for securing a judicial sale in order to collect "any other amount collectible in the same manner as a tax," 28 U.S.C. § 3003(b), and each requirement set forth in Section 7403 is met. Plaintiff filed this action to enforce its federal tax liens pursuant to Section 7403 and its judgment liens pursuant to Section 3201. (Compl. at 13–14.) Plaintiff included as Defendants in this action, and duly

notified, "[a]ll persons having liens upon or claiming any interest in the property" through service of the Summons and Complaint. 26 U.S.C. § 7403(b); *see also* 26 U.S.C. § 7403(c); Compl. at 1; *supra* note 1. As discussed above, the Parties do not dispute that Plaintiff has "a claim or interest" in the Property through its federal tax liens and judgment liens. *See supra* Discussion § I.A–B.

Accordingly, having determined the priority of the Plaintiff's judgment liens in relation to the County's tax liens upon the Property, I order the judicial sale of the Property pursuant to Section 7403, with the net proceeds of such sale going first to satisfy Plaintiff's judgment liens on the Property before satisfaction of the County's tax liens.

## III.    Defendants' Cross-Motion

In their Cross-Motion for summary judgment, Defendants seek a judgment finding (1) that the County's tax liens have priority over Plaintiff's judgment liens and (2) that the County's tax liens have priority over Plaintiffs' federal tax liens. (Defs.' Mem. at 1, 8.) They also request a judicial order "directing that [the] [P]roperty be sold." (Defs.' Reply at 7.)

Defendants' first request is contradicted by the plain text of the FDCPA and FTLA, which read together demonstrate that the FDCPA governs the prioritization of Plaintiff's judgment liens created under Section 3201 in relation to the County's tax liens. Moreover, applying this law to the undisputed facts, Plaintiff's judgment liens have priority over the County's tax liens because the Plaintiff's judgment liens were perfected earlier in time. *See* Discussion § II. Therefore, Defendants' Cross-Motion for summary judgment seeking a ruling that the County's tax liens have priority over Plaintiff's judgment liens is denied.

With respect to the second issue raised in Defendants' Cross-Motion, Plaintiff has not moved for summary judgment on the issue of whether its federal tax liens have priority over the

County's tax liens. *See supra* note 3 (citing Defs. Mem at 19 n.19). Instead, Plaintiff opposes Defendants' Cross-Motion on this point, arguing that the County's tax liens were extinguished after the County took fee simple ownership of the Property in 2020. (Pl.'s Opp'n at 17–20.)

It is undisputed that on January 1, 2015, the County's tax liens for unpaid real estate taxes for the 2014/2015 tax year attached to the Property. *See* N.Y. Real Prop. Tax Law § 902; *see also supra* Discussion § I.C. It is also undisputed that the Phillipses did not pay County real estate taxes for the property at any time after 2015. (*See* Pl.'s Counterstatement ¶ 25; Defs.' Counterstatement ¶ 26.) Nevertheless, Defendants have not provided sufficient legal authority to support a finding that, as a matter of law and based on undisputed facts, the County tax liens remain attached to the Property even after the County obtained title to the Property via a tax deed executed through an indenture on October 7, 2020—a condition precedent to any finding that the County's tax liens have priority over Plaintiff's federal tax liens.

The only legal authority provided by Defendants is the 1954 New York Supreme Court decision in *Riverhead Estates Civic Association v. Gobron*, 206 Misc. 405 (N.Y. Supp. Ct. 1954).[8] *Riverhead* is not an appellate decision, much less a decision of New York's highest court (the New York Court of Appeals) and therefore does not provide a binding interpretation of the relevant New York law. *Torres v. City of New York*, 590 F. Supp. 3d 610, 624 (S.D.N.Y. 2022) (noting that "a decision in an individual case of the New York State Supreme Court, as New York's trial court, is not binding on future cases"). Furthermore, *Riverhead* does not support

---

[8] Plaintiff only provides a 1947 decision of the New York Supreme Court to support its contrary position that the County's tax liens were extinguished when the County took title to the Property. That case, *Tolfree v. Connolly*, does not appear to address the issue of whether the County's tax liens survive following the County's act of taking title to the Property. 188 Misc. 689, 692 (N.Y. Sup. 1946), *aff'd* 271 A.D. 1033 (N.Y. App. Div. 1947).

Defendants' position here. In *Riverhead*, the County was not a party to the litigation and the status of its tax liens was not at issue. *See id.* Instead, the defendant state officer had recorded a judgment lien against the real property at issue. *Id.* The County subsequently acquired title through a sale for unpaid taxes and then sold the property to the plaintiff. *Id*. The court held that the state officer's judgment liens were not "extinguished" because "[s]overeign liens" are "not cut off by a tax sale" and the County's tax claim, from which plaintiff's title stemmed, was not "superior to that of the *State*." *Id.* at 406 (emphasis added). *Riverhead* does not address the second issue presented in Defendants' Cross-Motion: whether a local government's tax liens against a property have priority over federal tax liens when the local government took title to the property through a tax deed conveyance. Moreover, Defendants have not identified legal authority for the propositions that: (1) the state officer's judgment liens in *Riverhead* are equivalent to the County tax liens at issue in this action, and (2) that the tax sale considered in *Riverhead* is equivalent to the tax deed conveyance under which the County obtained title to the Property at issue here.

Accordingly, Defendants have failed to establish that, as a matter of law, the County's tax liens remain attached to the Property even though Defendants now hold title to it. For all of these reasons, Defendants' Cross-Motion is denied as to the request that the Court issue judgment finding that the County's tax liens have priority over Plaintiff's federal tax liens.

Finally, Defendants have not brought any counterclaims or otherwise requested relief in their Answer that would support their summary judgment request for an order "directing that [the] [P]roperty be sold." (Defs.' Reply at 7; *see* Defs.' Answer.) As discussed above, in opposition to Plaintiff's Cross-Motion, Defendants raised a meritless argument that Plaintiff cannot seek a judicial order of sale as a lienholder. *See supra* Discussion § II. Because I have

granted Plaintiff's request for a judicial sale under Section 7403, Defendants' Cross-Motion is dismissed as moot with respect to Defendants' request for an order directing a judicial sale of the Property.

## CONCLUSION

For the reasons set forth above, Plaintiff's Cross-Motion (ECF No. 61) is granted. Defendants' Cross-Motion (ECF No. 65) is denied with respect to Defendants' request for a judgment finding that the County's tax liens have priority over Plaintiff's judgment liens and that the County's tax liens have priority over Plaintiffs' federal tax liens; and it is dismissed as moot with respect to Defendants' request for an order directing a judicial sale of the Property.

In a forthcoming order, the Court will schedule a status conference during which the Parties will provide their positions on the next steps to resolve the sole remaining issues in this litigation: whether the County's tax liens remain attached to the Property following the County's acquisition of title to the Property in 2020 and whether the County's tax liens have priority over Plaintiff's federal tax liens.[9]


Dated:  Central Islip, New York
        September 19, 2025


                                    _/s/ Nusrat J. Choudhury____
                                    NUSRAT J. CHOUDHURY
                                    United States District Judge

---

[9] In their briefs, the Parties suggest that if I grant Plaintiff summary judgment on the basis that its judgment liens have priority over the County's tax liens, then the issue of whether the County's tax liens have priority over Plaintiff's federal tax liens is moot. (*See* Pl.'s Mem. at 19 n.9 (stating that Plaintiff chose not to move for summary judgment on this issue "because the priority of [its] [j]udgment [l]iens should be dispositive of the case"); Defs.' Reply at 5 (stating "Permitting Plaintiff to subvert the proper procedure," the Internal Revenue Code, "would result in a *complete loss* to the County." (emphasis added)).) However, there are insufficient facts in the record to support such a conclusion at this time.